# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>2116 4th STREET LLC,<br><br>    Debtor. | Case No. 23-00298-ELG<br><br>(Chapter 11) |
| In re:<br><br>315 WEST REAR ST LLC,<br><br>    Debtor. | Case No. 23-00299-ELG<br><br>(Chapter 11) |

## JOINT MOTION FOR ENTRY OF AN ORDER
## APPROVING SETTLEMENT AGREEMENT RESOLVING
## THE SECURED CLAIMS OF WCP FUND I, LLC

2116 4th Street LLC ("**2116 4th Street**") and 315 West REAR St LLC ("**315 West** "), each a debtor and debtor-in-possession in the above-captioned cases, as applicable (together, the "**Debtors**"), hereby file this joint motion (the "**Motion**") for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving a settlement agreement between the Debtors and WCP Fund I, LLC ("**Lender**"), resolving the Lender's secured claims. In support thereof, the Debtors state as follows:

### Jurisdiction

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

---

Kristen E. Burgers (DC Bar No. 500674)
Stephen E. Leach (DC Bar No. 925735)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: kburgers@hirschlerlaw.com

*Counsel to the Debtors*

2. The relief sought in this Motion is based upon Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**Background**

3. On October 17, 2023 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating their respective chapter 11 case (the "**Chapter 11 Cases**"). The Debtors continue to manage their respective property and financial affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee of creditors has been appointed in these Chapter 11 Cases.

**A.    The Debtors and the Properties**

4. 2116 4th Street was formed on June 14, 2021 for the purpose of owning and managing a former row house located at 2116 4th Street NE, Washington, DC 20002 that had been converted into a condominium building with three residential units and four parking units (the "**4th Street Property**"). Prior to its conversion, the 4th Street Property was a private residence owned by Andre Jean and Rosenie Thelus as tenants-by-the entirety since May 2014.

5. 315 West is affiliated with 2116 4th Street. 315 West owns a vacant parcel of real property with a storage shed located at 315 W Street NE, Washington, DC 20002 (the "**W Street Property**"), which is situated behind and across the alley from the 4th Street Property.

6. The Debtors are both owned by Johannes Group LLC, a Delaware limited liability company ("**Johannes Group**") formed by Ms. Thelus as sole member. The current members of Johannes Group are Mr. Jean and his father-in-law, Michel Thelus.

**B.     The WCP Loans**

7.     To finance the redevelopment of the 4th Street Property, on September 30, 2021, 2116 4th Street obtained a loan in the original principal amount of $1,621,395 (the "**4th Street Loan**") from the Lender. The 4th Street Loan accrued interest at 8.5% per annum, and it is secured by a lien on all of 2116 4th Street's assets, including but not limited to the 4th Street Property. The 4th Street Loan matured on September 30, 2022 and was cross-collateralized with the W Street Property.

8.     To refinance the W Street Property, on September 30, 2021, 2116 4th Street and 315 West also obtained a loan in the original principal amount of $225,000 (the "**W Street Loan**" and, together with the 4th Street Loan, the "**Loans**") from the Lender. The W Street Loan accrued interest at 15% per annum, and it is secured by a lien on all of 2116 4th Street's and 315 West's assets, including but not limited to the W Street Property. The W Street Loan matured on September 30, 2022 and was cross-collateralized with the 4th Street Loan. 315 West executed the Deed of Trust on the W Street Loan.[1]

9.     The redevelopment and rebuilding process took longer than expected due to labor and supply shortages, as well as permitting and use issues. When the Loans matured in March 2023, the Debtors were unable to refinance the Loans because the redevelopment of the 4th Street Property not yet complete. The Lender was aware of the delay in construction, and it was the Debtors' understanding that the Lender verbally agreed to extend the maturity date of both Loans. The Lender denies that it granted an extension of the maturity date of the Loans.

10.    In September 2023, the Lender commenced foreclosure actions. The Lender added late fees and default interest to both Loans, thereby increasing the amount of the Loans by

---

[1] At some point, the Loans were transferred by Lender to SF NU, LLC. Lender is now the servicer of the Loans.

a significant amount. The Debtors had no choice but to file for bankruptcy to stop the foreclosure sales.

11.     As of the Petition Date, the outstanding balance of the 4th Street Loan was $2,120,609 (including interest, late fees, and penalties), and the outstanding balance of the W Street Loan was $279,194 (including interest, late fees, and penalties).

12.     During the pendency of these Chapter 11 Cases, the Loans continue to accrue interest at the default rate of 24% per annum.

13.     The Debtors raised objections relating to the rate, calculation, and amount of interest on the Loans, among other things. The Lender disputes the Debtors' objections.

14.     After good faith negotiations, the Debtors and the Lender have reached an agreement that resolves the Lender's claims against the Debtors, whereby (a) the Lender's claims will be allowed as a secured claim against 2116 4th Street in the amount of $1,621,395 and as a secured claim against 315 West in the amount of $478,605, such that the aggregate amount of the Lender's secured claims against the Debtors equals $2,100,000; (b) the Lender shall also have a secured claim against 315 West in the amount of $1,228.86 per day, which is the per diem default rate of interest on both Loans, for each day commencing on February 16, 2024 through the day of closing on the refinancing of the Loans[2] and payment in full of Lender's allowed secured claims; (c) the Debtors and the Lender shall provide releases to one another; and (d) the Debtors are authorized and directed to pay the allowed secured claims of Lender immediately from the proceeds of the refinancing (collectively, the "**Settlement**"). The Settlement shall only become effective if the refinancing closes and the Lender's allowed secured claims are paid in full no later than March 8, 2024. If the refinancing does not close and the Lender's allowed

---

[2] Contemporaneously herewith, the Debtors are filing a Motion for Authorization to Obtain Post-Petition Secured Financing, whereby the Debtors seek authorization to refinance both Loans.

- 4 -

secured claims are not paid in full on or before March 8, 2024, the Settlement shall be deemed void and of no further effect.

15. The proposed Settlement represents a significant cost savings to the estates and avoids the costs and uncertainties of litigation with the Lender over the amount of its secured claims.

## Relief Requested

16. By this Motion, the Debtors seek entry of an order pursuant to Bankruptcy Rule 9019 approving the settlement agreement between the Debtors and the Lender, compromising the Lender's secured claims against each of the Debtors and approving the releases and waivers contained in the attached proposed order.

## Basis for Relief

17. The Debtors seek approval of the settlement agreement pursuant to Bankruptcy Rule 9019, which states in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

18. Compromises are tools for expediting the administration of the case and reducing administrative costs and, as such, are favored in bankruptcy. *See Official Comm. of Unsecured Creditors v. White Plains Joint Venture (In re Bond)*, No. 93-1410, 1994 U.S. App. LEXIS 1282, at *9–*14 (4th Cir. Jan. 26, 1994) ("To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." (internal quotation marks omitted)); *see also United States ex rel. Rahman v. Oncology Assoc., P.C., et al.,* 269 B.R. 139, 149 (D. Md. 2001) ("Settlements are to be encouraged, and it should not be the intention of a court to discourage settlements.").

19. As a matter of policy, Bankruptcy Rule 9019(a) grants courts broad authority to consider and approve compromises and settlements involving the trustee and the bankruptcy estate. *See, e.g.*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("[I]n administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims to which there are substantial and reasonable doubts"). Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy court. *In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

20. In *TMT Trailer*, the Supreme Court pronounced the "fair and equitable" test as the standard for approval of a compromise and settlement. 390 U.S. at 424. In applying the "fair and equitable" test, courts look at various factors and determine whether the compromise is in the best interest of the estate and whether it is fair and equitable. These factors include: (a) the probability of success in litigation, (b) the potential difficulties if any in collection, (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it, and (d) the paramount interests of the creditors. *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D.Va. 1977); *see In re Austin*, 186 B.R. 397, 400 (Bankr. E.D.Va. 1995).

21. Here, the Debtors respectfully submit that the settlement is fair, equitable and properly reflects the appropriate legal outcome. As an initial matter, the settlement is the product of good faith, arm's-length negotiations between the Debtors and the Lender. Moreover, the settlement provides benefits to the bankruptcy estates and satisfies the standards for approval of a compromise.

22. The first factor, probability of success in litigation, always entails some risk. While the Debtors believe that their objections to the Lender's claims are well-founded, there is a

possibility that the Lender would prevail in defending against the objections. If the Lender prevailed, the Lender's claims would be significantly greater because of the accrual of additional interest due to the passage of time and the legal fees and costs incurred by the Lender in defending the objection. This factor weighs in favor of approval of the settlement.

23. The second factor, difficulty in collection, does not apply in the context of a claim objection.

24. The third factor, the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it, also weighs in favor of settlement. While the loan documents are fairly straightforward, the issue of whether or not extensions were granted would involve extensive discovery and parole evidence. This would result in significant time delay until the claim objection could be heard before this Court, and a decision either way could very well result in an appeal. As noted above, if the Lender prevails, the Lender's claims would continue to accrue interest and the Lender would incur legal expenses during this time period. Even if the Lender does not prevail, the Debtors will incur significant legal expenses in litigating the claim objection, and all other creditors will have to wait for distributions until the litigation is resolved.

25. The final factor, the paramount interests of the creditor, clearly also favors approval of the settlement. The Lender is voluntarily reducing its secured claims by over $250,000, which directly benefits other creditors. The proposed Settlement will provide a guaranteed benefit to creditors without delay and avoid the potentially large administrative expense of litigation.

26. For each of the aforementioned reasons, the Debtors submit that settlement of the Lender's claims on the terms set forth herein is in the best interest of creditors and the estates and

should be approved.

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto, approving the Settlement with the Lender on the terms described herein and granting such other and further relief as may be just and proper.

Dated:  February 28, 2024                                    Respectfully submitted,

*/s/ Kristen E. Burgers*
Stephen E. Leach (DC Bar No. 925735)
Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Phone:  (703) 584-8900
Facsimile:  (703) 584-8901
Email:  sleach@hirschlerlaw.com
         kburgers@hirschlerlaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of February, 2024, a copy of the foregoing Joint Motion for Entry of an Order Approving Settlement Agreement Resolving the Secured Claims of WCP Fund I, LLC, along with all attachments thereto, was served by operation of this Court's CM/ECF electronic case management system on all parties identified on the "ECF Service List" attached hereto as Exhibit 1; (ii) by first class U.S. mail, postage prepaid, on the parties identified on the "First Class Mail Service List" attached hereto as Exhibit 2.

*/s/ Kristen E. Burgers*
Kristen E. Burgers

# **EXHIBIT 1**

## **ECF SERVICE LIST**

**Electronic Mail Notice List** - Parties in the case only

- **Kristen S. Eustis**:  Kristen.S.Eustis@usdoj.gov
- **Sara Kathryn Mayson**:  sara.kathryn.mayson@usdoj
- **Maurice B. VerStandig**:  mac@mbvesq.com

# EXHIBIT 2

### FIRST CLASS MAIL SERVICE LIST

| | | |
|---|---|---|
| DC Office of Tax and Revenue<br>PO Box 96165<br>Washington, DC 20090-6165 | Internal Revenue Service<br>Centralized Insolvency Operations<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | U.S. Trustee for Region Four<br>U.S. Trustee's Office<br>1725 Duke Street, Suite 650<br>Alexandria, VA 22314 |
| Travelers<br>Obie Insurance Services, LLC<br>1134 West Hubbard St., Fl. 3<br>Chicago, IL 60642 | Victor Saeh<br>2414 Watts Street<br>Houston, TX 77030 | Granlan, LLC<br>10000 SW 231st Lane<br>Miami, FL 33190 |
| PHL Trust<br>10000 SW 231st Lane<br>Miami, FL 33190 | Thelan Inc.<br>P.O. Box 77304<br>Washington, DC 20013 | EKM Law PLLC<br>2 Massachusetts Ave., NE #76607<br>Washington, DC 20013 |
| Nueva Ideas Utilities<br>1921 East West Highway, Apt. 204<br>Silver Spring, MD 20910 | Zurich in North America<br>1299 Zurich Way<br>Schaumburg, IL 60196 | |

16956024.1 048852.00001