## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| In re: | ) |
| | ) |
| **315 WEST REAR ST LLC,** | ) |
| | ) |
| Debtor. | ) |
| | ) |

Case No. 23-00299-ELG

(Chapter 11)

_____

### FIRST INTERIM APPLICATION OF HIRSCHLER FLEISCHER
### AS BANKRUPTCY COUNSEL TO THE DEBTOR FOR INTERIM ALLOWANCE AND
### AUTHORIZATION OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

Hirschler Fleischer ("**HF**"), bankruptcy counsel to 315 West REAR St LLC, the chapter

11 debtor in possession (the "**Debtor**"), respectfully submits this first interim application (the

"**Application**") for allowance and authorization of payment of compensation and reimbursement

of expenses on an interim basis pursuant to sections 328 and 330 of the United States Bankruptcy

Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**").  The Application covers the period from October 17, 2023, through

October 31, 2024.  HF seeks interim allowance and authorization of payment for legal fees in the

amount of $18,773.00 and reimbursement of expenses in the amount of $64.00, for a total award

of $18,837.00.  In support of this Application, HF respectfully states as follows:

_____

Kristen E. Burgers (D.C. Bar No. 500674)
Stephen E. Leach (D.C. Bar No. 925735)
HIRSCHLER FLEISCHER P.C.
1676 International Drive, Suite 1350
Tysons, Virginia  22102
Telephone:     (703) 584-8900
fax:               (703) 584-8901
Email:          sleach@hirschlerlaw.com
                   kburgers@hirschlerlaw.com

*Counsel to the Debtor*

## Jurisdiction

1.    The Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this case and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for the relief sought herein are sections 328, 330, and 503(b) of the Bankruptcy Code and Bankruptcy Rule 2016.

## Background

3.    On October 17, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, initiating this chapter 11 case (the "**Chapter 11 Case**").  The Debtor continues to manage its property and financial affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee of creditors has been appointed in this Chapter 11 Case.

**A.    Events Preceding the Bankruptcy Case**

1.    The Debtor was formed in 2019 for the purpose of owning and re-developing real property located at 315 W Street NE, Washington, DC 20002 (the "**W Street Property**"). The W Street Property is improved by a concrete block storage shed but is otherwise vacant.

2.    2116 4th Street LLC ("**2116 4th Street**") is affiliated with the Debtor.  2116 4th Street was formed on June 14, 2021 for the purpose of owning, developing, and managing a former row house located at 2116 4th Street NE, Washington, DC 20002 which was converted into a condominium building with three residential units and four parking units  (the "**4th Street Property**").   2116 4th Street also filed a voluntary chapter 11 bankruptcy petition before this Court on October 17, 2023 (Case No. 23-00298).

- 2 -

3.      To finance the redevelopment of the 4th Street Property, on September 30, 2021,

2116 4th Street obtained a loan in the original principal amount of $1,621,395 (the "**4th Street**

**Loan**") from WCP Fund I, LLC ("**Lender**"), an affiliate of Washington Capital Partners.  The

4th Street Loan accrued interest at 8.5% per annum, and it was secured by a lien on all the

Debtor's assets, including but not limited to the 4th Street Property.  The 4th Street Loan was

cross-collateralized with the W Street Property. The 4th Street Loan matured on September 30,

2022 and was subject to two three-month extensions.

4.      To refinance the W Street Property, on September 30, 2021,  the Debtor and 2116

4th Street obtained a loan in the original principal amount of $225,000 (the "**W Street Loan**"

and, together with the 4th Street Loan, the "**Loans**") from the Lender.  The W Street Loan was

cross-collateralized with the 4th Street Loan.  The W Street Loan accrued interest at 15% per

annum, and it was secured by a lien on all the Debtor's and 2116 4th Street's assets, including but

not limited to the 4th Street Property and the W Street Property.  The W Street Loan matured on

September 30, 2022 and was subject to two three-month extensions.

5.      When the Loans matured in March 2023, the Debtor and 2116 4th Street were

unable to refinance the Loans because the redevelopment of the 4th Street Property not yet

complete.  Once redevelopment was substantially complete on or about June 2023, the  Debtor's

and 2116 4th Street's prepetition efforts to refinance the Loans were unsuccessful due to the

cross-collateralization of the Loans and rising interest rates, among other things.

6.      In September  2023, the Lender commenced foreclosure actions.  It added late

fees and default interest to both Loans, which increased the balance due on the Loans by a

significant amount.  The foreclosure sales were scheduled to occur at 2:00 p.m. on October 17,

2023.  The Debtor had no choice but to file for bankruptcy to stop the foreclosure sales.

**B.      The Bankruptcy Case**

7.      After the Petition Date, the Debtor renewed its efforts to refinance the Loans.  The

Debtor's efforts were frustrated by rising interest rates, reluctance by banks to lend in the current

economic climate, and the high payoff balances on the Loans due to the continued accrual of

interest at the default rate of 24% per annum.

8.      In February, 2024, the Debtor and 2116 4th Street obtained lending commitments

from Black Label Capital for a loan in the amount of $2,115,050 (the "**Refinancing**"), which

would be secured by a first priority deed of trust on the 4th Street Property and the W Street

Property.

9.      To effectuate the Refinancing, the Debtor and 2116 4th Street, on the one hand,

and the Lender, on the other hand, reached a settlement agreement (the "**Settlement**") that

resolved the Lender's claims against the Debtor and 2116 4th Street.  Among other things, the

Settlement provided for the compromise of  the Lender's claims to an aggregate amount of

$2,100,000, plus $1,228.86 per day (which is the per diem default rate of interest on both Loans)

for each day commencing on February 16, 2024 through the day of closing on the Refinancing.

10.      Orders approving the Settlement and authorizing the Refinancing were entered by

the Court on March 1, 2023 [Docket Nos. 42 and 43, respectively].

11.      The Refinancing was set to close on March 8, 2024.  Unfortunately, the

Refinancing ran into unanticipated issues in the underwriting process because of the proposed

lender for the Refinancing  required a new appraisal for the 4th Street Property.  The Refinancing

ultimately did not close.

12.      Thereafter, the Debtor and 2116 4th Street engaged with several other lenders in

an effort to source new refinancing.  Those efforts ran into similar issues with the valuation of

the 4th Street Property.  Even though 2116 4th Street was the sole owner of the 4th Street Property,

the fact that it had been converted to condominiums created issues as to whether the 4th Street

Property was a single commercial property or three residential properties (one for each

condominium unit).  All the while, interest continues to accrue at the default rate.

13.     On April 16, 2024, in the 2116 4th Street bankruptcy case, the Lender filed its

Disclosure Statement and Chapter 11 Plan of Reorganization [Docket No. 53], which was

amended by the Lender's Amended Disclosure Statement filed on June 27, 2024 [Docket No.

65].  The Plan proposes an auction sale of the 4th Street Property to satisfy claims against the

2116 4th Street bankruptcy estate.

14.     On October 15, 2024, the Court entered an order approving the Lender's

Amended Disclosure Statement and the Lender's Chapter 11 Plan of Reorganization (the "**Plan**")

[Docket No. 91] for 2116 4th Street.  Pursuant to the terms of the Plan, the Effective Date of the

Plan is October 29, 2024.

15.     Notwithstanding the proposed auction sale of the 2116 4th Street Property, the

Debtor and 2116 4th Street continue to actively seek refinancing for the properties.

## **HF's First Interim Application**

16.     The Court entered an order approving the employment of HF as counsel to the

Debtor on December 11, 2023 [Docket No. 40], effective as of the Petition Date (the "**HF

Employment Order**").

17.     This is HF's first interim application for allowance of compensation and

reimbursement of expenses, covering the period from October 17, 2023, through October 31,

2024 (the "**Application Period**").  HF seeks interim allowance and authorization of payment for

legal fees in the amount of $18,773.00 and reimbursement of expenses in the amount of $64.00,

for a total award of $18,837.00.   A copy of HF's detailed time records is attached hereto and incorporated herein as Exhibit A.  An itemized list of the necessary expenses incurred in this Bankruptcy Case is attached hereto and incorporated herein as Exhibit B.

18.     All services and expenses reflected on Exhibits A and B to this Application were performed or incurred on behalf of the Debtor, as a debtor in possession under chapter 11 of the Bankruptcy Code, during the Application Period and not for or on behalf of any other person or entity.  These services and expenses relate only to legal matters affecting the administration of the estate.

19.     HF has no agreement or understanding with any third party with respect to sharing of the compensation sought in this case.

20.     HF is currently holding a pre-petition retainer in the amount of $6,614.00 as security for payment of its allowed legal fees and costs.

**Summary of HF's Services**

21.     The following is a summary, by category, of the legal services provided by HF to the Debtor during the Application Period.  A more complete description of the actual tasks performed by HF attorneys is included in HF's time records attached hereto as Exhibit A.

**A.      General Case Administration (Matter No. 00003)**

1.     Services Rendered.  The Debtor required assistance of counsel for the general administration of the Bankruptcy Case.  In particular, counsel communicated with the Office of the U.S. Trustee (the "**UST**") and provided the UST with all requested information.  HF also provided guidance to the Debtor in preparing and filing its monthly operating reports and in meeting its other reporting obligations as a debtor-in-possession. Finally, counsel advised the Debtor in communications with its insurance carrier regarding continuation of coverage and

related issues.

2.     Summary of Fees.  The following HF attorney provided legal services to the

Debtor in connection with the general administration of this Bankruptcy Case.

| Timekeeper | Number of Hours | Hourly Rate | Total |
|---|---|---|---|
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2023 Rate)* | 7.3 | $515.00 | $3,759.50 |
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2024 Rate)* | 8.7 | $550.00 | $4,785.00 |
| **TOTAL** | **16.0** | | **$8,544.50** |

**B.     Schedules of Assets and Liabilities (Matter No. 00004)**

1.     Services Rendered.  HF counsel worked with the Debtor to prepare its schedules,

Statement of Financial Affairs, creditor matrix, lists and related disclosures.  Counsel also

prepared and filed the notice of contingent, disputed, and unliquidated claims.

2.     Summary of Fees.  The following HF attorney provided legal services to the

Debtor in connection with the schedule of assets and liabilities in this Bankruptcy Case.

| Timekeeper | Number of Hours | Hourly Rate | Total |
|---|---|---|---|
| Kristen E. Burgers (Principal) (First bar admission: 2004) (2023 Rate) | 3.8 | $515.00 | $1,957.00 |
| **TOTAL** | **3.8** | | **$1,957.00** |

**C.     Financing and Cash Collateral (Matter No. 00005)**

1.     Services Rendered.  HF counsel worked with the Debtor to review the terms of

the Refinancing and to obtain Court approval for the Refinancing, in tandem with the approval of

the Settlement.  When the Refinancing could not be consummated, counsel worked with the

Debtor on alternative sources of funding and debt structure.

     2.   <u>Summary of Fees</u>.  The following HF attorney provided legal services to the

Debtor in connection with financing and cash collateral in this Bankruptcy Case.

| Timekeeper | Number of Hours | Hourly Rate | Total |
|---|---|---|---|
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2023 Rate)* | 0.1 | $515.00 | $51.50 |
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2024 Rate)* | 4.7 | $550.00 | $2,585.00 |
| **TOTAL** | **4.8** | | **$2,636.50** |

**D.**    **Asset Sales and Disposition (Matter No. 00006)**

     1.   <u>Services Rendered</u>.  HF counsel advised the Debtor with respect to the W Street

Property, its development potential, and potential options for sale or refinancing.

     2.   <u>Summary of Fees</u>.  The following HF attorney provided legal services to the

Debtor in connection with asset sales and disposition in this Bankruptcy Case.

| Timekeeper | Number of Hours | Hourly Rate | Total |
|---|---|---|---|
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2024 Rate)* | 2.0 | $550.00 | $1,100.00 |
| **TOTAL** | **2.0** | | **$1,100.00** |

**E.**    **Creditor Meetings and Inquiries (Matter No. 00008)**

     3.   <u>Services Rendered</u>.  HF counsel prepared the Debtor for its initial meeting of

creditors.  HF worked with the Debtor to gather and organize documentation required by the

UST and requested by creditors.  HF responded to creditor inquiries about the status of the Bankruptcy Case and related matters.

4.    <u>Summary of Fees</u>.  The following HF attorney provided legal services to the Debtor in connection with creditor meetings and inquiries in this Bankruptcy Case.

| <u>Timekeeper</u> | <u>Number of Hours</u> | <u>Hourly Rate</u> | <u>Total</u> |
|---|---|---|---|
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2023 Rate)* | 0.9 | $515.00 | $463.50 |
| **TOTAL** | **0.9** | | **$463.50** |

**F.    Employment and Compensation Applications (Matter No. 00009)**

1.    <u>Services Rendered</u>.    At the Debtor's direction, HF prepared and filed an Application to Employ Hirschler Fleischer as Bankruptcy Counsel on November 11, 2023 [Docket No. 20], and the Court entered the HF Employment Order on December 11, 2023.  The Debtor did not retain other professionals in the Bankruptcy Case.

2.    <u>Summary of Fees</u>.  The following HF attorneys provided legal services to the Debtor in connection with financing and cash collateral in this Bankruptcy Case.

| <u>Timekeeper</u> | <u>Number of Hours</u> | <u>Hourly Rate</u> | <u>Total</u> |
|---|---|---|---|
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2023 Rate)* | 2.00 | $515.00 | $1,030.00 |
| **TOTAL** | **2.00** | | **$1,030.00** |

**G.    Claims Analysis and Objections (Matter No. 00012)**

1.    <u>Services Rendered</u>.  HF reviewed and analyzed the claims asserted by the Lender

and advised the Debtor accordingly.

2.    Summary of Fees.  The following HF attorneys provided legal services to the

Debtor in connection with claims analysis and objections in this Bankruptcy Case.

| Timekeeper | Number of Hours | Hourly Rate | Total |
|---|---|---|---|
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2023 Rate)* | 1.10 | $515.00 | $566.50 |
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2024 Rate)* | 4.50 | $550.00 | $2,475.00 |
| **TOTAL** | **5.60** | | **$3,041.50** |

**Fees**

The following is a summary of the time charges across all matters by individual attorney

or paralegal for which HF seeks compensation in connection with this Application:

| Timekeeper | Number of Hours | Hourly Rate | Total |
|---|---|---|---|
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2023 Rate)* | 15.2 | $515.00 | $7,828.00 |
| Kristen E. Burgers (Principal) (First bar admission: 2004) *(2024 Rate)* | 19.9 | $550.00 | $10,945.00 |
| **TOTAL** | **35.1** | | **$18,773.00** |

**Reasonableness of the Compensation Sought**

22.    The Debtor believes that HF performed its services efficiently, that the services

were necessary to the estate, and that HF's rates are comparable to the rates charged by other

attorneys in the Washington, D.C. metropolitan area for comparable services.  HF's blended hourly rate is approximately $535.00.

23.    The fees sought in this case represent reasonable compensation for actual, necessary legal services rendered on behalf of the Debtor for services provided during the Application Period, based upon section 330(a)(3) of the Bankruptcy Code and the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (cited favorably in *In re Auto-Train Corp.*, 15 B.R. 160, 161 (Bankr. D.C. 1981)).  Those factors include the time and labor expended, the novelty and difficulty of the questions raised, the skill required to perform properly the legal services rendered, the attorneys' opportunity costs in pursuing the matter, the customary fee for like work, the attorneys' expectations at the outset of the matter, the time limitations imposed by the client or circumstances, the amount in controversy and the results obtained, the experience, reputation and ability of the attorneys, the desirability or undesirability of the case within the legal community in which the case arose, the nature and length of the professional relationship between attorney and client and attorneys' fee awards in similar cases.

A.    <u>Time and labor expended</u>.  HF attorneys spent 35.1 hours during the time period covered by this Application.  A summary of the number of hours worked by each individual attorney is set forth above and in the detailed time records attached hereto as <u>Exhibit A</u>.  In this case, HF has charged the same standard billable rates for each attorney that it charges for such attorney in other bankruptcy and non-bankruptcy cases on which he or she works.  HF bases its billable rates upon the experience of the attorney.  The rates charged compare favorably to rates charged by other large law firms in the Washington, D.C. metropolitan area.

B.      <u>Novelty and difficulty of the questions raised</u>.  As further set forth above, HF

rendered a wide variety of services on many different issues during the time period covered by

the Application.  The issues in this case required HF to analyze, advise, and represent the

Debtor in matters of some complexity and sophistication, due in large part to the

condominium structure of the 4th Street Property and the legal and valuation issues created

from that structure and the cross-collateralization with the W Street Property.

C.      <u>Skill required to perform properly the legal services rendered.</u>   During the

Application Period, HF professionals rendered services on behalf of the Debtor.  The

complexity of the legal and factual disputes involved in this Bankruptcy Case required the skill

of experienced bankruptcy counsel.

D.      <u>Attorneys' opportunity costs in pursuing the matter</u>.  The Debtor demanded and

received immediate attention to the legal issues arising in this case during Application Period.

At times, the work required adequately to represent the Debtor affected HF's opportunity to

represent clients in other matters.  In particular, HF worked on very tight deadlines to file the

Bankruptcy Case and to file motions to approve the Refinancing and the Settlement.

E.      <u>Customary fee for like work</u>.  HF believes that the standard rates it charges for

services performed by its professionals compare favorably to the rates charged by comparable

law firms in the Washington, D.C. metropolitan area for comparable services in business

reorganization cases.

F.      <u>Attorneys' expectations at the outset of the matter</u>.  When HF agreed to

represent the Debtor, HF understood that the estate did not have sufficient operating funds to

pay HF's fees on an on-going basis.  HF expected that fees and expenses in excess of the

retainer would be paid through the release of the Debtor's assets as the pending litigation was resolved.

G.    <u>Time limitations imposed by the client or circumstances</u>.  At times, this case imposed significant time limitations upon HF.

H.    <u>The amount in controversy and the results obtained</u>.   The amounts involved in this case were not necessarily large, but they were significant to the Debtor and the creditors in this Bankruptcy Case.

I.    <u>Experience, reputation and ability of the attorneys</u>.  The professionals who rendered services to the Debtor are highly qualified in the fields in which they practice and routinely command the fees they charge in other cases.

J.    <u>Desirability or undesirability of the case within the legal community in which the case arose</u>.  This is a challenging case, but is not necessarily one that would be viewed as undesirable in the local legal community.

K.    <u>Nature and length of professional relationship between attorney and client</u>.  HF commenced its representation of the Debtor shortly before the Petition Date.  HF routinely represents debtors in chapter 11 matters.

L.    <u>Attorneys' fee awards in similar cases</u>.  HF believes that bankruptcy counsel in the Washington, D.C. metropolitan area have been allowed fees comparable to those it requests in this Application based upon the time and effort expended on behalf of the Debtor and the quality of representation provided to the Debtor.

**<u>Expenses</u>**

24.    As set forth on <u>Exhibit B</u>, HF incurred $64.00 in reasonable, necessary expenses in providing professional services to the Debtor during the Application Period.   By this

Application, HF seeks reimbursement of $64.00 for such expenses.

## **Authority**

25.      Pursuant to section 330 of the Bankruptcy Code, the Court may award HF reasonable compensation for actual and necessary services performed in this case.  For the reasons stated above, the Debtor believes that the services performed by HF were necessary to the administration of this case, were performed at a cost and efficiency commensurate with the complexity, importance and nature of the issues involved, and were undertaken by professionals whose rates are reasonable based upon the customary compensation charged by comparably skilled professionals in matters other than cases under this title.  The Debtor's representative has reviewed HF's request for fees and expenses.

*REMAINDER OF PAGE INTENTIONALLY BLANK*

WHEREFORE, HF requests that this Court enter an order (i) allowing the requested compensation in this Application for legal services to HF in amount of $18,773.000 and reimbursement of expenses in the amount of $64.00 for the period from October 17, 2023 through October 31, 2024, on an interim basis; (ii) authorizing HF to apply the pre-petition retainer in the amount of $6,614.00 to its allowed fees and expenses; and (iii) authorizing the Debtor to pay such sums as an allowed administrative expense of this proceeding pursuant to section 330 of the Bankruptcy Code; and (iv) granting such other and further relief as may be just and proper.

Dated:  November 14, 2024

Respectfully submitted,

/s/ Kristen E. Burgers
Stephen E. Leach (DC Bar No. 925735)
Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Phone:  (703) 584-8900
Facsimile:  (703) 584-8901
Email:  sleach@hirschlerlaw.com
          kburgers@hirschlerlaw.com

*Counsel to the Debtor*

17863597.1  048848.00001